# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

GLENN DESHAWN BROWNE,

    Defendant.

Case No.: SACR 16-00139-CJC

**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL**

On March 9, 2017, after a seven-day jury trial, Defendant Glenn Deshawn Browne was convicted of one count of conspiracy to receive, possess, conceal, store, sell, or dispose of stolen firearms in violation of 18 U.S.C. § 371, two counts of receipt, possession, concealment, storage, sale, or disposal of stolen firearms in violation of 18 U.S.C. § 922(j), and one count of unlawful possession of a firearm and ammunition by a felon in violation of 18 U.S.C. § 922(g)(1). Defendant now moves for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 on the grounds that there was

insufficient evidence to prove beyond a reasonable doubt that Defendant was guilty of all four counts.[1] (Dkt. 113 (Notice of Motion and Motion); Dkt. 116-1 [Corrected Motion, hereinafter "Mot."].) For the following reasons, the motion is DENIED.

"The hurdle to overturn a jury's conviction based on a sufficiency of the evidence challenge is high." *United States v. Rocha*, 598 F.3d 1144, 1153 (9th Cir. 2010). A motion for judgment of acquittal must be denied if, "'viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Reed*, 575 F.3d 900, 923 (9th Cir. 2009) (quoting *United States v. Herrera–Gonzalez*, 263 F.3d 1092, 1095 (9th Cir. 2001)).

Regarding Count One for conspiracy to receive, possess, conceal, store, sell, or dispose of stolen firearms in violation of 18 U.S.C. § 371, the government was required to prove (1) beginning on or about August 29, 2015, and ending on or by August 20, 2016, there was an agreement between two or more persons to commit at least one crime charged in the indictment; (2) Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy. (Dkt. 105 at 21 (Jury Instruction No. 21).) At trial, the Cooperating Witness ("CW") testified that on August 30, 2015, she met with Defendant, told him she had stolen firearms that she wanted to sell, and asked Defendant if he knew anyone who would be interested in buying them. As a result, Defendant introduced her to Kory White (also known as "White Dogg"), a potential buyer. On August 31, 2015, Defendant drove

---

[1] Defendant's notice of motion also states that the motion is based in part on the Court's refusal "to instruct on the defense theory of the case of multiple conspiracies," but his brief provides no analysis or argument in support of an acquittal on this ground. (*See generally* Mot.) For the reasons stated in the Court's order resolving Defendant's accompanying motion for a new trial, the Court made no error, plain or otherwise, by not instructing the jury on multiple conspiracies.

CW and the stolen firearms to White's residence so that CW could complete the sale of the stolen firearms. CW further testified that Defendant concealed the firearms in a blanket and carried them from his car to White's apartment. Defendant also kept one of the stolen firearms, a Glock pistol, for himself—the same one he possessed when he was later arrested on August 20, 2016. The following month, Defendant and CW exchanged several text messages regarding the payment of $250, which CW testified was the money Defendant owed her for the firearm Defendant kept for himself when they visited White's residence.

Defendant incorrectly contends that this evidence demonstrated only a buyer-seller relationship as opposed to a conspiracy. (Mot. at 17.) To the contrary, viewing such evidence in the light most favorable to the prosecution, any rational trier of fact could find that (1) Defendant entered into an agreement with CW to receive, possess, conceal, store, or sell stolen firearms, (2) Defendant became a member of the conspiracy with knowledge of the object of receiving, possessing, concealing, storing, or selling firearms and intent to help accomplish that objective, and (3) Defendant performed several overt acts to carry out that conspiracy, including introducing White and CW, transporting and concealing the firearms, and keeping one of the stolen firearms himself.

Defendant also argues that the text messages between Defendant and CW regarding the $250 never explicitly referenced a firearm sale and Defendant could have owed CW $250 for a number of reasons. (Mot. at 15.) However, CW testified that the $250 was for the sale of one of the stolen firearms. (Dkt. 121 at 89:10–94:11.) Defendant attempts to dismiss CW's testimony by arguing that she was a "career criminal" and an "unrepentant thief," and without her testimony, "there would be no evidence to convict defendants on Counts I thru [sic] IV." (Mot. at 3.) However, the Court is "powerless to question a jury's assessment of witnesses' credibility" and must presume that the trier of fact resolved any conflicting inferences in favor of the

prosecution. *United States v. Johnson*, 229 F.3d 891, 894 (9th Cir. 2000). Here, the jury was alerted to CW's criminal history, uncharged crimes, and motive and bias for providing testimony, and her testimony was independently corroborated by text messages, call records, historical cell site analysis, geolocation data, and forensic evidence. (*See, e.g.*, Trial Ex. 57, 77, 81, 83A, 83B, 85, 90–94, 103.) Viewing this evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See United States v. Tam*, 240 F.3d 797, 806 (9th Cir. 2001) (finding the evidence sufficient where "the jury was aware of the witnesses' involvement in the scheme as well as their potential biases when it made its credibility finding" and "independent evidence corroborated several aspects of the witnesses' testimony.").

Defendant also argues that the evidence at trial showed only a conspiracy to steal, not to sell firearms, and points out that CW conceded Defendant was not involved in the initial burglary of the firearms at issue. (Mot. at 14–16.) However, the evidence presented at trial focused on conduct *after* the firearms were initially stolen. That Defendant was not involved in the initial burglaries is immaterial, since CW's testimony, corroborated by electronic and forensic evidence, sufficiently demonstrated that Defendant was part of the conspiracy to receive, possess, conceal, store, or sell the firearms after they were stolen.

As to Count Two for receipt, possession, concealment, storage, sale, or disposal of stolen firearms on August 31, 2015, in violation of 18 U.S.C. § 922(j), the government was required to prove (1) Defendant received, possessed, concealed, stored, sold, or disposed of a stolen firearm, (2) Defendant knew or had reasonable cause to believe the firearm was stolen, and (3) the firearm moved or was shipped in interstate or foreign commerce before or after being stolen. (Dkt. 105 at 23 (Court's Instruction No. 22).) Defendant does not challenge the sufficiency of the latter two elements. Instead, he

argues that the first element was not satisfied because CW alone "maintained and held the power and ability to exercise dominion and control over those 6 guns right up until the time she sold the guns to White," and the fact that Defendant was aware of the firearms' presence and associated with White and CW during the exchange of firearms is insufficient. (Mot. at 17.) This argument is unavailing. CW testified that Defendant loaded the stolen firearms in his car before driving CW to White's residence, including the Glock pistol he later kept for himself, transported the firearms to White's residence in his car, concealed the stolen firearms in a blanket, and carried them from his car to White's residence. Viewing such evidence in the light most favorable to the government, any rational trier of fact could conclude that Defendant had custody, control, and possession of the stolen firearms individually or jointly with CW. (Dkt. 105 at 28 (Court's Instruction No. 25 (A "[p]erson has possession of something if the person knows if its presence and has physical control over it, or knows of its presence and has the power and intention to control it.")).) Furthermore, any rational trier of fact could have concluded from the evidence that Defendant aided and abetted CW in committing Count II through his loading, transporting, and concealing of the firearms. (*Id.* (Court's Instruction Nos. 20, 23).)

Finally, Counts Three and Four arose out of firearm and ammunition discovered during Defendant's arrest on August 20, 2016. The elements of Count Three for receipt, possession, concealment, storage, sale, or disposal of stolen firearms in violation of 18 U.S.C. § 922(j) are identical to those in Count Two. For Count Four, the government was required to prove (1) Defendant knowingly possessed the Glock pistol or ammunition, with all jurors agreeing as to the firearm and/or ammunition Defendant possessed; (2) the Glock pistol or ammunition had been shipped or transported from one state to another; and (3) at the time defendant possessed the Glock pistol or ammunition, Defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year. (Dkt. 105 at 26 (Court's Instruction No. 24).) Defendant challenges

these two counts only as to the sufficiency of the evidence demonstrating that Defendant knew the gun was in the car when he was arrested. (Mot. at 18.) Defendant was arrested after a woman who identified herself as "Lisa" called 911 to report that a black male named Darquisse, wearing all black clothing and a black hat, with a black Camaro, was at her back door with a gun. One of the officers who responded to the call, Jonathan Delgadillo, testified that when the police arrived on the scene, Defendant was sitting in a black Camaro and matched the caller's description. Defendant also provided the false name of "Darquisse Smith" to the police after his arrest. Officer Alejandro Puche searched the Camaro and found the Glock pistol hidden behind the glove box. He testified that it was hidden in such a way that it could have been placed there within seconds by someone sitting in the drivers' seat of the car. Additionally, DNA consistent with Defendant's DNA was found on the trigger and trigger guard of the Glock pistol. CW testified earlier that she had stolen a Glock pistol in August 2015 and sold it to Defendant, and the owner of OC Firearms confirmed that the Glock recovered from the Camaro had been stolen during a burglary that CW had participated in. Viewed in the light most favorable to the prosecution, any rational trier of fact could conclude that Defendant knowingly possessed the Glock pistol recovered from the Camaro on the day of Defendant's arrest.

Contrary to Defendant's assertion, it is immaterial that the officers did not observe Defendant making "furtive gestures or other movements consistent with hiding the gun," (*id.*), since Defendant had plenty of time to hide the firearm behind the glove box before he was aware of the police's presence. Defendant also argues that the 911 call was a "questionable tip" that was inconsistent with Defendant hiding a gun in the car. (*Id.*) However, the Court has already found that the 911 call was reliable and much of information provided by the caller was verified by the police officers before Defendant was arrested. (*See* Dkt. 57 (Court's Order denying Defendant's suppression motion) at 9–13.) Finally, Defendant claims that the DNA evidence does not prove the ability to

exercise dominion and control over the firearm. (*Id.*) However, evidence indicating that Defendant personally touched the firearm, coupled with the fact that Defendant was also in the car where the firearm was found, could lead any rational trier of fact to conclude that Defendant knowingly possessed it when viewed in the light most favorable to the prosecution.

For the foregoing reasons, Defendant's motion for a judgment of acquittal is DENIED.

DATED: April 24, 2017

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE